# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| **WILLIAM B. COOK, on behalf of himself and all other Plaintiffs similarly situated,** | ) | **Case No.  1:06 CV 1206** |
| | ) | |
| **Plaintiffs,** | ) | **Judge Dan Aaron Polster** |
| | ) | |
| **vs.** | ) | |
| | ) | **MEMORANDUM OF OPINION** |
| **ALL STATE HOME MORTGAGE, INC., et al.,** | ) | **AND ORDER ON DEFENDANT'S** |
| | ) | **MOTION TO RECONSIDER** |
| | ) | **CRIMINAL SANCTIONS** |
| **Defendants.** | ) | |

Before the Court is Defendant All State Home Mortgage's ("All State"[1]) Motion to Reconsider Court's Criminal Sanction Order of $10,000 Against All State Home Mortgage, Inc. ("Motion") **(ECF No. 44)**.  For the following reasons, the Court **DENIES** Defendant All State's motion to reconsider its earlier criminal sanction order.

## I.  BACKGROUND

The instant Motion is filed pursuant to a case currently on appeal to the Sixth Circuit.[2]

---

[1]All State Home Mortgage, Michael McCandless, and James Fiore are collectively "Defendants."

[2]The underlying case involves a complaint filed under the Fair Labor Standards Act by Plaintiff William Cook and additional opt-in plaintiffs including Plaintiffs Pete Toth and Andy Toth.  (ECF Nos. 1, 3.)  In response, Defendant All State Home Mortgage filed a motion to dismiss and compel arbitration.  (ECF No. 22.)  After particularly adversarial and acrimonious litigation, and several ultimately unsuccessful attempts to mediate the case, the Court granted Defendant All State's motion to dismiss and compel arbitration.  (ECF No. 31.)  Plaintiff Cook thereupon appealed the Court's order to compel arbitration to the Sixth Circuit.  (ECF No. 35.)  See the

The specific events leading directly to the Motion, however, remain before this Court pursuant to the Court's June 6, 2006 No Contact Order by which the Court ordered the parties to have no contact with each other and that all communications must be through counsel.  (ECF No. 8).[3]

**A. The No Contact Order and Subsequent Reiterations Thereof**

The Court issued its No Contact Order after Plaintiff Andy Toth alleged Defendants Michael McCandless[4] and Jamie Fiore[5] had made death threats against Toth and otherwise caused Toth to feel unsafe for his family and his person.  (See Show Cause Order, ECF No. 41,

---

Court's Memorandum of Opinion and Order for additional details of the underlying facts.  (ECF No. 31.)

[3]This Court retains jurisdiction to enforce its No Contact Order, notwithstanding the fact that the case is before the Sixth Circuit.  The Sixth Circuit has explained that "an effective notice of appeal divests the district court of jurisdiction over matters forming the basis for appeal."  *U.S. v. Lubowa*, 102 Fed. Appx. 453, 455 (6th Cir. 2004) (*citing American Town Center v. Hall*, 912 F.2d 104, 110 (6th Cir. 1990)).  In collateral matters not involved in the appeal, however, the district court retains jurisdiction.  *See, e.g.*, *Fieldturf, Inc. v. Southwest Rec. Indus.*, 212 F.R.D. 341, 344 (D. Ky. 2003) (quoting *Garcia v. Burlington N. R. Co.*, 818 F.2d 713, 721 (10th Cir. 1987)).  The Court's enforcement of its No Contact Order is collateral to the merits of the case on appeal here (and, by extension, so is finding criminal contempt for Defendant All State's violation of the Supplemental Show Cause Order).

Relatedly, the Court notes that Defendant All State filed a motion for attorney fees, costs, and expenses associated with compelling arbitration as provided for in the employment agreements (ECF No. 37), and that the Court denied this motion for lack of jurisdiction over the matter on appeal (ECF No. 38).  Defendant All State mistakenly attempts to conflate the instant contempt issue with the question of attorney fees to conclude that either the Court was wrong to deny the motion for attorney fees or lacks jurisdiction to impose criminal contempt sanctions.  The costs in question are only applicable if the arbitration provision is enforceable.  Thus, the attorney fees, costs, and expenses question is inherently bound up with the merits of the case on appeal, and consequently the Court lacked jurisdiction over Defendant All State's motion for fees, costs, and expenses.  Conversely, Defendant All State's alleged violation of the Court's No Contact Order, and its disobedience of the Court's Supplemental Show Cause Order, are collateral issues over which the Court clearly retains jurisdiction.

[4]Michael McCandless is the President of Defendant All State Home Mortgage, Inc.  (ECF No. 1, 2.)

[5]James (Jamie) Fiore is a manager at Defendant All State Home Mortgage, Inc.  (ECF No. 1, 2.)

-2-

1-2.)  Specifically, the Court ordered:

> The parties are to have absolutely no communication with each other, be it oral, written, electronic, or otherwise.  All communication between the parties must occur through counsel.

(ECF No. 8.)

The Court issued this order orally during a teleconference with counsel on June 5, 2006, and then filed a written No Contact Order the next day.  (See ECF No. 8.)  On June 8, 2006, three days after the Court's No Contact Order, Plaintiffs filed a Request for a Restraining Order and Motion to Show Cause, asking the Court to enjoin Defendants and all those acting in concert with them from threatening and/or intimidating, directly or indirectly, the Plaintiffs.  (ECF No. 17.)  Plaintiffs again alleged that Defendants made death threats to one of the Plaintiffs.  (Id., Wallace Dec.)  This time, Plaintiffs represented that All State Loan Officer James Palatnik (a/k/a/ Ilya Palatnik) had telephoned Plaintiff James Wallace on June 7, 2006, after the Court's No Contact Order, and threatened to kill Wallace if Wallace did not leave Ohio within 48 hours. (See ECF No. 17, at 3 (citing Wallace Dec. ¶¶ 6-9).)  Defendants opposed the motion.  (ECF No. 18.)

After reviewing the briefs, the Court held a further teleconference with counsel, all parties (except one opt-in Plaintiff, Jennifer Watts, who asked to be dismissed from this case under suspicious circumstances), and Palatnik.  (ECF No. 41, 3.)  When the Court asked Palatnik if he made the call to Wallace, he denied doing so.  (Id.)  On June 13, 2006, the Court issued an order denying Plaintiffs' motion on the basis that Palatnik denied making the call, and "[s]ince

-3-

the telephone conversation was not recorded and the call was placed from a restricted number, . . . there [was] no way for the Court to determine if Palatnik made the call."  (Id. (citing ECF No. 21).)

The Court subsequently considered Defendants' Motion to Dismiss Litigation and Compel Arbitration (ECF No. 22) and Plaintiffs' opposition brief (ECF No. 23).  On August 7, 2006 the Court issued a Memorandum of Opinion and Order granting Defendants' Motion (ECF No. 31).  Then, on August 15, 2006, the Court denied Plaintiffs' later motion for reconsideration. (ECF Nos. 33, 34.)  Plaintiffs filed an appeal on September 4, 2006.  (ECF No. 35.)

On August 29, 2006 Plaintiff Andy Toth called the Court stating that Defendant Fiore had left a threatening voicemail message on Toth's phone.  (ECF No. 41, 4.)  The Court held a teleconference with Attorney Michael Harvey (counsel for Defendants) and Toth during which the Court <u>again</u> reminded Attorney Harvey that all Defendants were under court order not to contact any of the Plaintiffs.  (Id.)

**B.  The Events Giving Rise to the October 25, 2006 Show Cause Hearing**

On October 23, 2006, Plaintiff Andy Toth called the Court to report yet another harassing phone call from Defendants.  (ECF No. 41, 5.)  Toth explained that he and his wife took their three young children (an infant, a one-year-old, and a three-year-old) dressed in rooster costumes to the Akron Zoo on Saturday night, October 21, 2006 to enjoy the event known as "Boo at the Zoo."  (Id.)  He stated that the next morning at 5:45 a.m. they received a call on the cell phone during which the caller stated, "Cock-a-doodle-do, bitch.  You like roosters?"  (Id.)  Toth saved the voice mail on his phone, although he was not able to ascertain the caller's phone number as the call came from a restricted number.  (Id.)

-4-

Based on this information, the Court issued an order to Verizon, Toth's cell phone provider, on October 23, 2006 directing Verizon to provide the name, address, and phone number of the caller.  (Id.)  Verizon determined the call was placed from telephone number 440-729-2751, but could not determine the name and address associated with that number, because the number was serviced by Ameritech.  (Id.)  The Court then issued an order to Ameritech directing it to provide the name and address associated with that number.  (Id.)  Ameritech informed the Court that the number belonged to Ilya Palatnik, who resides at 13150 Spring Blossom Trail, Chesterland, Ohio 44026-2933.  (Id.)

### C. The Court's October 24, 2006 Show Cause Orders

As an employee of Defendant All State, Palatnik was and is subject to the Court's No Contact Order.  Accordingly and in light of Toth's allegations and the information obtained from Verizon and Ameritech, the Court issued a Show Cause Order on October 24, 2006 directing Palatnik to appear before it the next day, at 11:00 a.m. to show cause why he should not be held in contempt of court for violating the No Contact Order.  (ECF No. 41.)  The Court directed the United States Marshals Service to personally serve a copy of the order on Palatnik at his office and/or his residence, issued the Show Cause Order on the Court's electronic filing system, and sent a copy of the order by facsimile transmission to Attorney Harvey.  (See id.)

After the Court issued the order, the Court held a teleconference with counsel during which Attorney Harvey represented to the Court that Palatnik denied making the Sunday morning phone call to the Toths.  (See ECF No. 42, 1.)  According to Attorney Harvey, Palatnik held a party at his house on Saturday, October 21, 2006 that had stretched into the early morning hours of Sunday, October 22, 2006, and the call was placed after Palatnik went to bed.  (Id.)  The

-5-

Court asked Attorney Harvey if other guests at Palatnik's party also worked at Defendant All State Home Mortgage.  (Id. at 1-2.)  Attorney Harvey replied in the affirmative.  (Id.) Accordingly, the Court orally instructed Attorney Harvey that all employees of Defendant All State who were at the party were ordered to appear before the Court during the next day's hearing to show cause why they should not be held in contempt of court for violating the Court's No Contact Order.  The Court immediately thereafter issued a Supplemental Show Cause Order, which explicitly mandated the following:

> [T]he Court hereby **ORDERS** all employees of All State who attended Mr. Palatnik's party to appear before the Court . . . tomorrow, Wednesday, October 25, 2006 at 11:00 a.m. to show cause why they should not be held in contempt of court for violating the Court's No Contact Order.

(ECF No. 41, 2 (emphasis included).)

The Court issued the Supplemental Show Cause Order on the Court's electronic filing system at 3:34 p.m. EST, and immediately thereafter sent copies of the order via facsimile transmission to Attorney Harvey and Defendant McCandless.  The fax confirmation report for the transmission to Defendant McCandless indicates the fax was sent at 3:46 p.m.. EST, and received by McCandless at 3:48 p.m. EST.[6]  (ECF No. 54-6.)

### D.  The October 25, 2006 Show Cause Hearing

At the show cause hearing before the Court at 11:00 a.m. on October 25, 2006, Palatnik testified that Defendant Fiore and Stanislav Tsiperson, both Defendant All State employees, also attended the party.  (See Non Edited Rough Draft Transcript of Proceedings[7], October 25, 2006

---

[6]The Court notes that although the times printed on the fax confirmation report are 2:46 p.m. and 2:48 p.m., these times are one hour slow.

[7]Edited, final versions of the proceeding transcripts have not been produced.  Rather, the Court has copies of the Non-Edited Rough Drafts of the transcripts for the October 25, 2006 and

at 2-3.)  Neither Defendant Fiore nor Tsiperson appeared before the Court at the October 25, 2006 hearing.  Attorney Harvey represented to the Court that he had faxed the Orders to his client the day before, but did not know why the individuals ordered to be present before the Court were not.  (Id. at 3-4.)  Attorney Harvey also represented to the Court at a different point in the hearing that he received the Supplemental Show Cause Order fax transmission, and that he "did in fact fax that same order off to All State."  (Id. at 25).

Consequently, the Court fined Defendant All State $10,000 for criminal contempt based on a willful violation of the Court's order, in the Court's presence, to have <u>all</u> Defendant All State employees who were at the party present before the Court for the October 25, 2006, 11:00 a.m. show cause hearing.  (See id. at 4.)  After testimony from Plaintiff Andy Toth about the call, during which Toth played the recorded threatening voice mail for the Court, the Court heard testimony from Palatnik.  Palatnik testified that he had gone to bed before the call was made. (Id. at 17.)  Palatnik also testified that a former All State employee, Eugene Novik[8], made the threatening phone call while Palatnik and some of the other partygoers (including Defendant Fiore) slept.  (Id. at 17-19.)

The Court then heard testimony from Novik, who testified that he made the threatening phone call to Toth.  (Id. at 28.)  Novik testified that he picked up Defendant Fiore's cell phone that was lying on a table and looked up Toth's phone number in the "phone book" in Fiore's cell

---

October 31, 2006 hearings.  All pages cited herein for the transcripts are to the pagination for these rough draft transcripts.  Specific rough draft transcript pages cited herein are also attached as exhibits to this Memorandum of Opinion and Order, with pages from the October 25, 2006 hearing as Exhibit A, and pages from the October 31, 2006 hearing as Exhibit B.

[8]Novik testified that he worked at All State from May, 2005 to August, 2005, and that he was not aware of the Court's No Contact Order.  (Tr. October 25, 2006, at 27, 32-33.)

-7-

phone.  (Id. at 28.)  According to Novik's testimony, he "was looking through [Fiore's cell phone] phone book, other people's phone books that were there, and I was calling people.[9]"  (Id. at 28-29.)  Novik also testified that Defendant Fiore was "sleeping" or "passed out" at the time (id. at 29; 36), and that Novik made the calls from outside on the deck, while Fiore, Palatnik, and all but one of the other partygoers were inside (id. at 33).  Novik further testified that no one else knew he called Toth.  (Id. at 33.)

After Novik's testimony, the Court reiterated that its Orders on October 24, 2006 ordered <u>all</u> Defendant All State employees who attended the party to appear in court and testify about why they should not be held in contempt.  Defendant All State did not obey the order, and consequently the Court found it necessary to continue the proceedings to October 31, 2006 in order to question the other All State employees who were at Palatnik's party.

### E.  The October 31, 2006 Continued Show Cause Hearing

At the continued proceedings on October 31, 2006, Defendants McCandless and Fiore appeared, as did Tsiperson.  Defendant McCandless testified that he received the faxed Orders, and that he understood the Orders were clear.  (See Non Edited Rough Draft Transcript of Proceedings, October 31, 2006, at 106-07.)  Defendant McCandless also testified that Palatnik and others represented to McCandless that only Palatnik and Novik needed to appear at the October 25, 2006 hearing.  (See id. at 104-08.)  Additionally, Defendant McCandless testified

---

[9]The Court notes that Novik testified that he "called a number of people that night" (Tr. October 25, 2006, at 29, 33) and that "most of the people I called in fact were people that I'm not especially. . . I mean, the people that I called I know personally, but they are not my good friends." (id. at 34).  On the other hand, Novik also testified that Toth "was the only person I called that night."  (Id. at 30.)

Novik also variously described his call to Toth as "just meant to prank . . . just a joke" (id. at 30), "just swearing at" Toth (id. at 31), intended to be a "friendly, joking call" (id. at 34), and "just a prank (id. at 37).

that he "left it up to my counsel [Attorney Harvey] to make sure that everything was in order,"

(id. at 105-06), although he also testified that he understood the scope of the Orders to include <u>all</u>

All State employees who were at the party (id. at 104).  The Court concluded the hearing and

took under advisement the events described above, to determine what, if anything, further should

be done.  (Id. at 108-09.)

On October 26, 2006, Defendants filed the instant Motion and accompanying

sworn declarations.

## II.  DISCUSSION

### A.  The Motion is Denied

Motions for reconsideration are "'extraordinary in nature and, because they run contrary

to notions of finality and repose, should be discouraged.'"  *Plaskon Elec. Materials, Inc. v.*

*Allied-Signal, Inc.*, 904 F.Supp. 644, 669 (N.D. Ohio 1995) (quoting *In Re August, 1993 Regular*

*Grand Jury*, 854 F.Supp. 1403, 1406 (S.D. Ind. 1994).  "As such, motions for reconsideration are

granted 'very sparingly.'" *Plaskon*, 904 F.Supp. at 669 (quoting *Bakari v. Beyer*, 870 F.Supp. 85,

88 (D. N.J. 1994)).  Generally, the factors that justify reconsideration of a court's orders are:  an

intervening change in controlling law, the availability of new evidence, and the need to correct

clear error or to prevent manifest injustice.  *Plaskon*, 904 F.Supp. at 669 (quoting *Bermingham v.*

*Sony Corp. of Am., Inc.*, 820 F.Supp. 834, 856 (D.N.J.1992), *aff'd*, 37 F.3d 1485 (3rd Cir. 1993).

As District Judge Katz has stated:

> Motions for reconsideration are not substitutes for appeal nor are they
> vehicles whereby a party may present arguments inexplicably omitted in prior
> proceedings.  *Karr v. Castle*, 768 F.Supp. 1087, 1093 (D. Del. 1991), *aff'd sub*
> *nom.* 22 F.3d 303 (3rd Cir. 1994), *cert. denied sub nom.*, 513 U.S. 1084 (1995).
> "A party seeking reconsideration must show more than a disagreement with the
> Court's decision, and 'recapitulation of the cases and arguments considered by the

court before rendering its original decision fails to carry the moving party's burden.'" *Database America, Inc., v. Bellsouth Advertising & Pub. Corp.*, 825 F.Supp. 1216, 1220 (D.N.J. 1993), citing *G-69 v. Degnan*, 748 F.Supp. 274, 275 (D.N.J. 1990).

*Plaskon*, 904 F.Supp. at 669.

It is unclear from Defendant All State's Motion upon which of the factors listed in *Plaskon* the Motion rests. The Court finds that the first two factors are inapplicable here. Moreover, Defendant All State fails to specifically argue either of the other two factors. Critically, the Court has reviewed Defendant All State's brief and exhibits, and finds that All State has not made the necessary showing to justify reconsidering the $10,000 criminal contempt sanction. Instead, Defendant All State simply reiterates its disagreement with the Court's decision and offers the same arguments and evidence in sworn declaration form that it offered orally first at the October 25, 2006 hearing and then at the October 31, 2006 hearing. Essentially, Defendant All State presents no new evidence for the Court to consider.

Accordingly, the Court **DENIES** Defendant All State's Motion for Reconsideration.

**B.  In the Alternative, the $10,000 Criminal Contempt Sanction Remains**

Even if the Court assumes Defendant All State has met its burden on the Motion, however, the Court still declines to disturb its $10,000 criminal contempt sanction against All State.

Defendant All State's argument(s) seem to reference elements of the "need to correct clear error" factor or the "to prevent manifest injustice" factor, but All State fails to explicitly identify which factor applies here. Instead, Defendant All State apparently argues the following:

1.  All State did not violate the No Contact Order and thus should not be penalized for not complying with the Show Cause and Supplemental Show Cause Orders (ECF No. 44, 1-3);

-10-

2.  All State's refusal to follow the Show Cause and Supplemental Show Cause
Orders did not rise to the level required for criminal contempt (id. at 5-6);

3.  the $10,000 sanction was alternatively a) excessive, b) arbitrary, c) prejudicial,
d) unfair, or e) disproportionate (id. at 3-4); or

4.  the contempt sanction should have been civil rather than criminal (id. at 6).

The Court addresses each of these arguments in turn to clarify that the $10,000 criminal

contempt sanction against Defendant All State does not constitute clear error or

manifest injustice.

### 1.  Defendant All State's First Argument: All State did not violate the No Contact Order, and thus should not be penalized for disobeying the Show Cause and Supplemental Show Cause Orders

Defendant All State conflates violation of the No Contact Order with disobedience of the

Show Cause and Supplemental Show Cause Orders.  While Defendant All State's potential

violation of the former order precipitated the later orders, it does not stand to reason that a

finding that there was no violation of the No Contact Order excuses All State's noncompliance

with the Supplemental Show Cause Order.[10]

The facts are clear.  First, the Court unambiguously instructed Attorney Harvey during

the October 24, 2006 teleconference that any and all All State employees who attended

Palatnik's party were required to appear before the Court the next day.  Second, the

Supplemental Show Cause Order explicitly ordered "all All State employees who attended Mr.

Palatnik's party to appear before the Court" at the October 25, 2006 hearing.  Third, Defendant

McCandless, the All State President, admitted in his oral testimony and his sworn declaration

---

[10]The Court explicitly notes that it has made no definitive ruling on whether Defendant All
State is in violation of the Court's No Contact Order, despite All State's assertions otherwise on
page 6 of its Motion.

-11-

that he received and knew about the Court's faxed Supplemental Show Cause Order, but failed to ensure compliance therewith.  Similarly, Attorney Harvey represented to the Court that he received the Supplemental Show Cause Order fax at his office, and that he faxed the same order to Defendant All State.  Thus, the Court properly found Defendant All State in criminal contempt at the October 25, 2006 show cause hearing, regardless of whether the subsequent testimony showed All State violated the No Contact Order.

> **2.  Defendant All State's Second Argument:  All State's refusal to follow the Show Cause and Supplemental Show Cause Orders did not rise to the level required for criminal contempt**

To be guilty of criminal contempt, the contemnor must have engaged in willful disobedience, which must be proved beyond a reasonable doubt.  *In re Hake*, 2006 Bankr. LEXIS 2428, *15 (6th Cir. Bankr. Oct. 3, 2006) (citing *TWM Mfg. Co., Inc. v. Dura Corp.*, 722 F.2d 1261, 1272 (6th Cir. 1983) (citing *United States v. Powers*, 629 F.2d 619, 626 n. 6 (9th Cir. 1980))).  Willfulness, in this context, means a deliberate or intended violation, as distinguished from an accidental, inadvertent, or negligent violation.  *Id.* (quoting *Wright v. Nichols*, 80 F.3d 1248, 1251 (8th Cir. 1996) (quoting *Hubbard v. Fleet Mortgage Co.*, 810 F.2d 778, 781 (8th Cir. 1987))).

Here, the Court finds that the facts demonstrate beyond a reasonable doubt that Defendant All State made a conscious choice of who would appear before the Court at the October 25, 2006 hearing.  Consequently the Court finds Defendant All State willfully disobeyed the Court's Supplemental Show Cause Order.  Defendant All State attempts to justify sending only one All State employee (Palatnik) and an additional unaffiliated witness (Novik) on the grounds of what All State personnel "presumed" the Court wanted to know.  (See, e.g., ECF No.

44, 2, 5; id., McCandless Dec. ¶ 8; id., Fiore Dec. ¶ 7; id. Harvey Dec. ¶ 4).  Again, the Court's oral instructions to Attorney Harvey, and the written Supplemental Show Cause Order, were explicitly clear and not open to interpretation.  Surmising the Court's intent shows that Defendant All State did, in fact, consciously choose noncompliance with the Court's order.

Similarly, the Court finds that Defendant All State as a corporate entity consciously disregarded the Court's orders.  It is of no importance whether fault lies with Attorney Harvey (whose actions are imputed to his client) or Defendant McCandless for his handling of the orders, or if, as McCandless represented in his October 31, 2006 hearing testimony, his employees were not forthcoming to him about the party attendees.  The end result is the same; the Court ordered that <u>all</u> All State employees who attended Palatnik's party must appear, and a deliberate decision was made that only Palatnik and Novik would attend the October 25, 2006 hearing.  Moreover, the Court notes that Novik's appearance, testimony, and admission seemed too convenient; Novik was the one person who appeared who was <u>not</u> covered by the Court's No Contact Order.

The Court finds that Defendant All State deliberately defied the Supplemental Show Cause Order's unambiguously clear language, which frustrated the purpose of the hearing; to have everyone present before the Court so the Court could confront all the witnesses in the same hearing.  Defendant All State chose to not send a key person (Fiore) whose testimony was critical, and therefore All State's disobedience is properly classified as criminal contempt before the Court.

### 3.  Defendant All State's Third Argument: the $10,000 sanction was alternatively a) excessive, b) arbitrary, c) prejudicial, d) unfair, or e) disproportionate

Defendant All State presents various descriptions of the $10,000 sanction throughout its Motion.  All State fails to provide, however, any supporting legal authority for its apparent claims that categorizing the amount as excessive, arbitrary, prejudicial, unfair or disproportionate is enough to overturn a sanction on reconsideration.  Given the character of the disobeyed Court Order, and the serious nature of the accusations prompting the Orders, the Court finds that a criminal contempt sanction of $10,000 in this case is reasonable and well within its discretion.

### 4.  Defendant All State's Fourth Argument: the contempt sanction should have been civil rather than criminal

The nature of a contempt citation is derived from the totality of the circumstances.  *In re Hake*, 2006 Bankr. LEXIS 2428, *6 (citing *In re Chandler*, 906 F.2d 248, 249 (6th Cir. 1990) (citing *In re Jaques*, 761 F.2d 302, 305 (6th Cir. 1985))).  A contempt fine is civil if it either coerces one into compliance with a court order or compensates for a loss sustained.  *Id.* (citing *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 829 (1994)).  A contempt fine is criminal if "it is imposed retrospectively for a 'completed act of disobedience'. . . ."  *Id.* (internal citations omitted).  The purpose of a criminal contempt fine is to vindicate the authority of the court.  *Id.* (citing *Gompers v. Bucks Stove & Range Co.*, 221 U.S. 418, 443 (1911); *TWM Mfg.*, 722 F.2d at 1270 n. 8).  Moreover, "a flat, unconditional fine totaling even as little as $50 announced after a finding of contempt is criminal if the contemnor has no subsequent opportunity to reduce or avoid the fine through compliance."  *Id.* (quoting *Int'l Union*, 512 U.S. at 829.

-14-

Here, the fine imposed by the Court does not compensate any aggrieved party, as the funds were paid to the Court. Additionally, the fine does not coerce Defendant All State into compliance with an order of the Court; the noncompliance was completed. Defendant All State had no opportunity to reduce or avoid the fine through future compliance, for the same reason. Thus, the fine is not properly considered civil.

Instead, the Court imposed the fine solely for punitive purposes – to punish a completed act of disobedience – and to vindicate the authority of the Court; the Court issued a clear order, which Defendant All State disobeyed. The subsequent October 31, 2006 continued hearing only further proves that Defendant All State completed its act of disobedience the requisite All State employees were not present at the start of the October 25, 2006. Accordingly the fine was properly classified a criminal, not civil, contempt sanction.

### III. CONCLUSION

Even if the Court were to grant Defendant All State's Motion to Reconsider, All State has failed to set forth any legitimate basis upon which to disturb the $10,000 criminal contempt sanction. As explained previously, however, the Court need not rely on the foregoing reconsideration analysis, because Defendant All State fails to meet its burden on the Motion. Accordingly, Defendant All State's Motion to Reconsider Court's Criminal Sanction Order of $10,000 Against All State Home Mortgage, Inc. **(ECF No. 44)** is hereby **DENIED**, and the

criminal contempt sanction in the amount of $10,000 against Defendant All State

remains undisturbed.

**IT IS SO ORDERED.**

_/s/Dan Aaron Polster    December 18, 2006_
**Dan Aaron Polster**
**United States District Judge**